

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM
F.#2007R00128

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 19, 2008

**Via ECF & Hand Delivery**

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:   United States v. Vito Rappa
             Criminal Docket No. 07-056 (RJD)

Dear Judge Dearie:

      The government respectfully submits this letter in anticipation of sentencing in the above-referenced case. The defendant is scheduled to be sentenced on May 29, 2008.

<u>BACKGROUND</u>

      As set forth in the Pre-Sentence Investigation Report ("PSR"), the defendant Vito Rappa has pled guilty to one count of official bribery, relating to a scheme to effect the release from custody of co-defendant Francesco Nania. This case arose from an investigation into the crew of Gambino organized crime family ("Gambino family") captain George DeCicco, after an individual in his crew decided to cooperate with the government ("CW #1"). With respect to the instant count of conviction, defendant Vito Rappa and co-defendants Gambino soldier Joseph Orlando, Joseph Zuccarello and Francesco Nania engaged in a conspiracy to bribe and attempted to bribe an individual they believed to be CW #1's corrupt law enforcement contact in United States Immigration and Customs Enforcement ("ICE"). The purpose of the bribery scheme was to effect Francesco Nania release from immigration detention. See PSR ¶¶ 20-22.

      The tape recordings made by CW #1 included dozens of recordings of Vito Rappa and others, including discussions regarding the offense of conviction and the defendant's

background.[1]  The tape recordings also included conversations involving the defendant where he provided encouragement and support to the conspirators involved in the trip taken by Joseph Orlando, Joseph Zuccarello and CW #1 to Las Vegas for the purpose of attempting to collect a debt, which conduct forms the basis for racketeering act seven.  See generally PSR ¶ 21.

On November 19, 2007, Rappa pled guilty to official bribery in violation of 18 U.S.C. § 201(b) pursuant to a written plea agreement.  As estimated in his plea agreement (attached hereto, but not filed electronically), the government's estimate of the advisory Guidelines range applicable to Rappa recommends a term of imprisonment of 15 to 21 months.  The Probation Department has a different estimate, recommending that the Court find that the advisory Guidelines range applicable to Rappa is 18 to 24 months, due to Probation's objection to the one-level "global point" recommended by the government.  See PSR ¶ 106.

ARGUMENT

I.  Legal Standard

In the Supreme Court's opinion in United States v. Booker, 125 S. Ct. 738, 743 (2005), which held that the Sentencing Guidelines are advisory not mandatory, the Supreme Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentence, but also may tailor the sentence in light of other statutory concerns.  See 18 U.S.C. § 3553(a).

Most recently, in Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial

---

[1]  Because of this large volume of recorded evidence, the defendant's claim that there is "no evidence whether direct or circumstantial that Mr. Rappa was mentioned or participated in any of the hundreds of hours of conversations between organized crime members and associates between 2006 and 2007" is entirely erroneous.  See Rappa Ltr. to USPO Patricia A. Sullivan (dated February 20, 2007).  On the contrary, the government is in possession of countless hours of recordings involving Mr. Rappa and numerous members and associates of organized crime.

benchmark." Gall, 128 S. Ct. at 596 (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented." Id. at 596-97 (citation and footnote omitted).

II.   The Court Should Sentence the Defendant Within the Advisory Guideline Range Estimated in the Plea Agreement

The defendant advocates for a non-Guidelines sentence, based principally on two arguments.  First, the defendant argues that his involvement in the instant offense was aberrational. Second, he contends that he should be afforded a three-level deduction in the Guidelines for a minimal role in the offense. For the reasons set forth below, these arguments are without merit.  In addition, an evaluation of the Section 3553(a) factors in this case strongly suggests a need for a sentence of imprisonment based on the nature of the offense and the need for the sentence imposed to afford just punishment and to promote deterrence and respect for the law.

A.   The Defendant's "Aberrant Behavior" Claim is Without Merit

Section 5K2.20 of the Sentencing Guidelines provides, in pertinent part, that "a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited [under this section]."  In turn, subsection (b) states that "[t]he court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20(b).  In promulgating Section 5K2.20, the Sentencing Commission noted that, "[a]s a threshold matter, this amendment provides that departure is available only in an extraordinary case." United States v. Gonzalez, 281 F.3d 38, 44 (2d Cir. 2002) (quotation omitted).

Although the policy statement embodied under Section 5K2.20 is admittedly advisory, the Court is required to consider such policy statements, 18 U.S.C. § 3553(a)(5)(A), and in this instance, the policy statement is instructive.  This is not "an exceptional case" where the defendant's criminal conduct can fairly be described as aberrant.

4

As set forth in the PSR, the defendant's behavior involved several weeks of planning and meetings, and the provision of approximately $70,000 to a soldier in the Gambino family for the purpose of effecting Francesco Nania's release from immigration detention.  PSR ¶¶ 14-16, 29.  Contrary to the defendant's assertion that this was aberrant behavior, the record clearly demonstrates that he was engaged in a complex pre-meditated scheme involving multiple participants.  The crime here thus involved significant planning and was not of limited duration.  See U.S.S.G. § 5K2.20(b).  Finally, it does not represent a "marked deviation" from an otherwise law-abiding life.  See id.  To the contrary, over the course of the government's investigation, Rappa was captured on tape by CW #1 in dozens of recordings, including recordings where Rappa encouraged the participants in the extortion conspiracy charged in racketeering act seven of Count One of the indictment.  Accordingly, and for the reasons discussed below, this Court should not impose a non-Guidelines sentence in this case on the basis of "aberrant behavior."

B.  Rappa is Not Entitled to a Mitigating Role Adjustment

The defendant next argues that he is entitled to a three-level downward adjustment for his role in the offense.  See Rappa Ltr. to USPO Patricia Sullivan dated Feb. 20, 2008 & Rappa Ltr. dated Apr. 24, 2008.  He argues that he had a minimal role in the offense, claiming in his letter to the Probation Department that he "met the informant and agent approximately one time and agreed to provide payment if it meant freeing his brother-in-law from immigration detention."  Rappa Ltr. to USPO Sullivan at ¶ 5.  The claim that Rappa met regarding this scheme "approximately one time" is entirely false.  As discussed above, Rappa met and spoke with CW #1, Zuccarello, Orlando and others dozens of times during the government's investigation.  In addition, the evidence shows that Rappa was the source of the $70,000 in bribe money that was paid to Joseph Orlando, which money was intended for CW #1's corrupt ICE contact.

Under circumstances where a defendant was actively involved in meetings regarding the scheme and provided the funding for the very crime at issue -- official bribery -- a mitigating role adjustment is wholly inappropriate.  See U.S.S.G. § 3B1.2 & Application Notes.  See also PSR ¶ 29 (explaining the Probation Department's rationale for denying Rappa a mitigating role adjustment).

5

    C.    <u>Factors of 18 U.S.C. § 3553(a)</u>

        1.    <u>History and Circumstances of the Offense</u>

As detailed above and in the PSR, Rappa was an active participant in the crime of conviction. In his submission, the defendant contends that he is "sincerely remorseful and contrite" and requests a sentence of probation. (Rappa Ltr. dated April 24, 2008 at 3, 5). Given the serious nature of the underlying offense and the defendant's active role in it, however, the history and characteristics of the offense weigh in favor of a sentence within the advisory guideline range for the purposes of punishment and promoting general and specific deterrence. <u>See</u> 18 U.S.C. § 3553(a)(1), (a)(2)(A) & (a)(2)(B).

        2.    <u>The Need for the Sentence Imposed</u>

The defendant asserts in his letter, without analysis, that a sentence of probation "is the just punishment for this offense" and that further punishment is not needed for the purposes of deterrence or to protect the public. (Rappa Ltr. dated April 24, 2008 at 5). As discussed above, however, the defendant's criminal conduct was serious and a sentence of incarceration is appropriate in order to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Indeed, a sentence of probation for a $70,000 attempted bribery of a federal official could risk promoting disrespect for the law. <u>See, e.g.</u>, <u>United States v. Cutler</u>, 520 F.3d 136, 154 (2d Cir. 2008) (concluding that the district court made errors in certain "Guidelines applications and in its departure decisions; that the sentences imposed did not properly interpret certain of the sentencing factors that the court was required to consider under 18 U.S.C. § 3553(a), such as just 'punishment' and deterrence of others; and that some of the court's rationales would promote disrespect for the law").

6

CONCLUSION

      For the foregoing reasons, the defendant should be sentenced to a term of incarceration within the advisory Guidelines range estimated in the plea agreement.

                                Respectfully submitted,

                                BENTON J. CAMPBELL
                                United States Attorney


                   By:    _____
                            Taryn A. Merkl
                            Assistant U.S. Attorney
                            (718) 254-6064

cc:  Paul Bergrin, Esq. (via ECF, w/o attachment and facsimile)